JOHN S. LEONARDO
United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant United States Attorney
Arizona State Bar No. 014249
kevin.rapp@usdoj.gov

MONICA B. KLAPPER
Assistant United States Attorney
Arizona State Bar No. 013755
monica.klapper@usdoj.gov

Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-12-1606-PHX-SRB |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' OPPOSITION TO DEFENDANTS' "MOTION FOR ACQUITTAL OR, ALTERNATIVELY, FOR A NEW TRIAL"** |
| 1. Paxton Jeffrey Anderson, | |
| 2. Joseph John Plany, | |
| Defendants. | |

The United States opposes Defendant Planys's request for either judgments of acquittal or a new trial on some or all of the multitude of bank fraud charges for which he was recently found guilty; to which Defendant Anderson has joined.  The Court has twice rejected Defendants' claims regarding the FDIC status of certain of the mortgage lenders in this case, and it should likewise summarily reject Defendants' third attempt at pressing these claims.

This Court should summarily reject the defense claims for several reasons.  First, the United States presented sufficient evidence from which a reasonable jury could conclude that "M&I Marshall and Ilsley Bank" and "TierOne Bank" were the relevant

1   mortgage lenders and were FDIC insured, supporting denial of the motions for acquittal

2   under Rule 29, Federal Rules of Criminal Procedure.  Second, Defendants' claims that

3   M&I Bank and TierOne Bank were not, in fact, the mortgage lending entities and that the

4   actual lending entities were not FDIC insured are wholly unsupported and incorrect; thus

5   supporting denial of the related motion for new trial under Rule 33, Federal Rules of

6   Criminal Procedure.  And finally, to the extent that Defendant may even raise a claim of

7   prosecutorial misconduct at this juncture, that claim necessarily fails too.    This

8   Opposition is supported by the following Memorandum of Points and Authorities, the

9   attached exhibits, and the record of the trial proceeding.

10   **Memorandum of Points and Authorities**

11   **I.**      **This Court should summarily deny the request for judgments of acquittal**
12               **because the  United States presented sufficient evidence from which the jury**
               **could, and did, reasonably conclude that the relevant lenders were FDIC-**
13               **insured.**

14           In ruling on a motion for judgment of acquittal under Federal Rule of Evidence 29,

15   this Court looks only to determine whether, "'after viewing the evidence in the light most

16   favorable to the prosecution, *any* rational trier of fact could have found the essential

17   elements of the crime beyond a reasonable doubt.'"  *United States v. Bennett,* 621 F.3d

18   1131, 1135 (9th Cir. 2010) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

19   *Jackson v. Virginia* requires this Court to "begin by viewing the evidence produced at

20   trial in the light most favorable to the prosecution," and then "consider whether the

21   evidence, as construed above, is sufficient to allow any rational juror to conclude that the

22   government has carried its burden of proof."   *Bennett,* 621 F.3d at 1135 (citations

23   omitted).

24           This Court will recall that Defendants moved for judgments of acquittal at the

25   conclusion of the trial and claimed that the loans at issue were not made by the same

26   entities for which the United States proved the FDIC status – that is, M&I Marshall and

27   Ilsley Bank, TierOne Bank, and Regions Bank.  Defendants subsequently withdrew their

28   challenge to the loans involving TierOne Bank, specifically stating that they did not

challenge the FDIC status of the lender related to those loans.  After initially orally rejecting the defense challenges, and allowing Defendants to submit additional documents in support of their argument as to M&I Bank and Regions Bank, this Court again rejected the remaining defense claims, as follows:

> Defendants do not argue that M&I Marshall and Ilsley Bank and Regions Bank are not federally insured.  Rather, they argue that there was evidence in this case that the loans at issue were made by related entities for which there was no proof of FDIC insurance.
> . . . .
>
> Exhibit 717-150, -182, -198, -210, -238, -260, -268, and -284 and Exhibit 730-028 and -033 are all copies of checking account statements showing the receipt of funds by wire transfer from M&I Marshall and Ilsley Bank with a reference to M&I Commercial Loan Transfer.  Nothing in these exhibits suggests to the Court that any entity other than M&I Marshall and Ilsley Bank, the FDIC insured entity, provided the funds that were the subject of the various bank fraud counts involving M&I loans.

(Document 239 at 2.)  As to the Regions Bank loans, this Court noted the references on the bank documents to both "Regions Bank" and to "Regions Mortgage, Inc.," and concluded:

> While these descriptions may be suggestive of Regions Bank having a separate mortgage company, that is the most that can be said of these documents.  It does not establish that a mortgage loan was made by an entity other than Regions Bank. . . .   These pages do not . . . prove that Regions Bank was not the entity which made the mortgage loans at issue.

(*Id.*)   This Court did not address the loans related to TierOne Bank, of course, because Defendants specifically disavowed such a challenge.

In the current "supplement" to the motion for acquittal, Defendants again acknowledge that M&I Bank, TierOne Bank, and Regions Bank were proven to be FDIC insured at the time of the offenses in this case, but claim:  as to M&I Bank, that the bank itself was not the lender and that the actual lender, M&I Mortgage Corporation, is not FDIC insured; and as to Tier One Bank, that there was insufficient evidence that Tier One Bank was in fact the lender – as opposed to some unknown, unnamed, non-FDIC insured affiliate.[1]

---

[1]  Defendant does not pursue a claim regarding Regions Bank, presumably

Just the opposite is true, of course – the United States presented an abundance of evidence that M&I Marshall and Ilsley Bank and TierOne Bank were the actual lenders on the loans that underlie the substantive bank fraud counts, and that those banks were FDIC-insured at the time the loans were obtained.  As to Regions Bank, their status is not particularly relevant because that institution is not the lender in any of the substantive counts, and their FDIC status was not necessary to their admission as either part of the fraudulent scheme or conspiracy, or as other act evidence under Federal Rule of Evidence 404(b); in any event, this Court's prior order concluding that the evidence was sufficient to support the FDIC-insured status of Regions Bank is amply supported.

### A.   M&I Marshall and Ilsley Bank

The United States presented an abundance of documents and testimony affirmatively showing that the same M&I Bank in the FDIC certification was the lender on the related loans.  Trial exhibit 734 is the FDIC certification for M&I Bank, and it shows that "the deposits of 'M&I Marshall and Ilsley Bank' are insured to the maximum amount allowed by the Federal Deposit Insurance Act."  (Attachment A at 734-005.)  It further shows that certification extends to "any domestic (U.S.) branch office of M&I Marshall and Ilsley Bank."  (*Id.* at 734-001.)

In terms of documents, as this Court pointed out in its previous ruling rejecting this argument, trial exhibits 717 and 730 have countless examples of wire transfers of loan funds received on the M&I loans from "M&I Marshall and Ilsley Bank." (Attachment B, containing example exhibits 717-150, 730-028.)  Additionally, the loan files demonstrate that the lender was in fact the insured institution.  For example, the loan file for the Hensteins contained in trial exhibit 819 contains the following:

- 819-105:  Deed of Trust stating "'Lender' is M&I Marshall and Ilsley Bank";

recognizing that none of the counts of conviction involve Regions Bank.

▪ 819-127: 5-Draw Disbursement Schedule with logo of "M&I Bank" on top of page; and

▪ 819-162: Settlement Statement stating "Name of Lender: M&I Bank." (Attachment C.)

Additionally, the literally hundreds of loan payments on the fraudulent loans, made either by Defendants or by the straw-buyers, all go to "M&I Bank"; trial exhibits 135-001 and 146-004 serve as examples. (Attachment D.) The Uniform Residential Loan Applications containing the material misstatements to obtain the loans, trial exhibit 716-003 for example, were completed on behalf of "M&I Bank." (Attachment E.) Similarly, falsified invoices used fraudulently used as a pre-paid expenses for the loans, such as trial exhibit 819-152, was faxed to "M&I Bank." (Attachment F.) Likewise, the Construction Loan Worksheet that served as an integral part of the fraud is labelled on top, "M&I Bank," with trial exhibits 709-423 and 819-185 as examples. (Attachment G.)

As far as testimony goes, the testimony of expert witness Wil Daly serves to further support the sufficiency of the evidence that the FDIC-insured M&I Bank was the lender on the M&I loans. Wil Daly served as the Vice President/Manager in charge of Special Assets in the Mortgage Division of M&I Bank, which became BMO Harris Bank in July of 2011. (Attachment H, R.T. May 14, 2014, at 4-7.) He testified that, during the relevant time period, he managed the wholesale sales division and sold wholesale mortgage products, which operate as follows:

> [A] local broker would meet with a borrower. Originate the loan application. Then sell one of our mortgage products which would then close in our name and then it would stay on our bank's books, whether it be construction loan, land loan, or just a home purchase, as opposed to someone who walks into an M&I Bank branch office, meets directly with that lender, takes out a loan that has always been an M&I product.

(*Id.* at 9, 61.) He confirmed that Greg Slater was an employee of M&I Bank, working as a retail loan officer at a bank branch, "[taking] loan applications from borrowers directly as they walked into a bank or his branch." (*Id.* at 10, 61-62.) He testified that M&I Bank was a community bank and was more likely to keep and service mortgage loans rather

than sell them off.  (*Id.* at 11-12.)  He explained that the loans were "processed" in Wisconsin.  (*Id.* at 63.)  He also testified that he served on a loan committee at M&I Bank that reviewed mortgage loans "that fell outside of our normal guidelines" based on size or number of loans.  (*Id.* at 64-65.)  Wil Daly discussed a blank version of the construction loan draw consent form that appeared several times during the trial, which references "M&I Mortgage Corp.," and stated that it was the form used by M&I Bank.  (*Id.* at 66.) (Attachment I.)

This is sufficient evidence from which a reasonable jury could, and did, conclude that M&I Bank was the lender and was federally insured, as required by the instructions to the jury.  (Document 205 at 16.)  Given the abundance of evidence consistent with the conclusion, not to mention the absence of evidence or argument to the contrary, no reasonably juror could have concluded otherwise.

**B.    TierOne Bank**

Defendants have affirmatively disavowed the same claim for TierOne Bank, and thus should not now be heard to make this argument now.  Waiver aside, similarly sufficient evidence was presented to the jurors that TierOne Bank was the lender on relevant fraudulent loans and was FDIC insured at that time.  For example, wire transactions showing the deposits of the fraudulently-obtained loan draws into accounts controlled by Defendants show the funds coming from "TierOne Bank."  (Attachment J, trial exhibits 717-182, 198, 201, 238 serve as examples.)  That is the same entity as shown on the corresponding FDIC certification, trial exhibit 735: "TierOne Bank" in "Lincoln, Nebraska."  (Attachment K.)

Likewise, the lender shown on the Uniform Residential Loan Application for Marti Jo Anderson's purchase of lot 46, for example, shows the lender as "TierOne Bank, Home Office" with an address in Lincoln, Nebraska.  (Attachment L, trial exhibit 727-050.)  This, of course, is the loan application containing many of the material misstatement and omissions to obtain the loan.  Additional misstatement, such as the falsified invoices, all have fax headers to "TierOne Bank."  (Attachment M, 817-0102

(JR Paint and Insulation, LLC), 817-0112 (JR Paint and Supplies), 817-0200 (Scottsdale Millworks), and 817-0212 (Venetian Stone, LLC).)

The loan documents themselves, for one of borrower Mark Acre's lots for example, show the lender on the construction note as "TierOne Bank" and show the lender on the settlement statement as "TierOne Bank" with an address of Lincoln, Nebraska.  (Attachment N, trial exhibit 817-0014, 0015 & 0020.)  Similarly, the related construction loan draw requests are for "TierOne Bank" – as seen in trial exhibit 817-0178, for example.  (Attachment O.)[2]

As with M&I Bank, this is sufficient evidence from which a reasonable jury could, and did, conclude that TierOne Bank was the lender for the fraudulent mortgages at issue and was insured by the FDIC during the relevant time period.[3]  Again, the evidence was abundant and uncontradicted on these points – no reasonable juror could have found otherwise.

II.   **This Court should likewise summarily deny the request for a new trial because the relevant lenders were in fact FDIC-insured.**

Defendants' claim that the M&I Bank loans at issue actually originated with a company called "M&I Mortgage Corporation," which Defendants posit was a non-FDIC

---

[2] This Court will also recall the testimony of Mike Blemaster, who brokered the TierOne Bank loans.  Throughout his testimony, he referred to the relevant loans as originating with TierOne Bank.  (Exhibit P, R.T. May 16, 2014, at i.e., 54, 55, 56, 61, 63, 65, 67, 79, 80, 93, 128.)

[3] Defendants point to a typographical error in the address related to a Mark Acre property located on 104th Street – referred to as "lot 28, Mirabel" in exhibits and at trial – as requiring a reversal of Counts 6 and 11.  Such a typographical error does not cause a fatal variance requiring acquittal or a new trial because the correct property was clear from other evidence, such as the legal description and the lot number, and because there was no prejudice to the defense.  *E.g., United States v. Mooney,* 417 F.2d 936, 938 (8th Cir. 1979) (typographical error in indictment reflecting address as "4265 Virginia" rather than "4255 Virginia" not fatal variance; "minor variations between indictment and proof, such as clerical errors as to time or place, cannot be fatal unless prejudice [is] established. Here, no possible prejudice has or could be shown.").  *See also United States v. Miller,* 471 U.S. 130, 134-37 (1985) (variance permissible as long as totality of evidence at trial proves crime charged).

- 7 -

insured sister subsidiary of a holding company called "M&I Corporation," is wholly unsupported by competent evidence, is contradicted by the evidence that was presented at trial, and is at times nonsensical.

There is no evidence to support a single assertion made by Defendants in their tortured analysis of the purported corporate structure of M&I Bank, the existence or status of its affiliates, or the FDIC status of any of the above.   (Motion at 9-12.) Defendants' claim is supported only by citations to various indiscriminate websites not shown to be reliable, or with results obtained only from the specific searches crafted by defense counsel.[4]

Moreover, many of the related assertions are unsound – for example, Defendant asserts that M&I Mortgage Corporation was the actual lender for the M&I-related loans, and that is existed from January 11, 1993 to December 1, 2006; but six of the M&I loans at issue, underlying counts 26-31, occur *after* December 1, 2006.  Other of assertions are just factually wrong – for example, Defendant seeks to inflame this Court by suggesting that the United States purposefully withheld certain evidence until this Court compelled disclosure; to the contrary, this Court will recall that it concluded that the United States was *not* required to disclose the evidence at issue (suspicious activity reports) at all. (Document 118.)  Still other of the assertions reflect a fundamental misunderstanding of the nature of FDIC insurance – as proof of the lack of FDIC-insured status of the lender of the M&I Bank loans, Defendants point to a letter by an M&I Bank internal investigator stating that, "M&I Bank is not compensated for this loss by insurance"; and it should go without saying that the FDIC insurance insures *account holders* against certain losses, it does not insure the institution itself against losses due to mortgage fraud.  Accordingly, this Court should summarily reject these factual assertions.

---

[4] For example, footnote 2 at page 9, purporting to be authority for M&I Bank's corporate structure, is a citation to a self-proclaimed watchdog website run by the Center for Media and Democracy, an entity with a goal of "exposing the undue influence of corporations and front groups on public policy."

1     The Fifth Circuit case law cited by Defendants is similarly unhelpful.  In *United*

2  *States v. Davis*, for example, the United States admitted at trial the FDIC certificate for

3  "American Express Centurion Bank" and presented evidence that "American Express

4  Company" was the victim lender for purposes of bank fraud charges, without presenting

5  evidence of the relationship between the two entities.  735 F.3d 194, 196-98 (5th Cir.

6  2013).  Not surprisingly, the appellate court reversed the related bank fraud convictions,

7  concluding that the evidence "perhaps could be read by a reasonably jury to find that

8  American Express Company had relationship with to [American Express Centurion

9  Bank].  It does not demonstrate, however, that American Express Company *controlled*

10  [American Express Centurion Bank]."  *Id.* at 200.

11     Similarly, in *United States v. Schultz,* in relation to charges of false statements to a

12  financial institution, the United States presented an FDIC certificate with one entity,

13  "TCB-National Association," and then presented evidence that a different entity, "TCB-

14  Sugar Land," was the victim lender.  17 F.3d 723, 725-26 (5th Cir. 1994).  The United

15  States also presented testimony from officials from TCB-Sugar Land that did not

16  sufficiently clarify the relationship between the two entities.  Again, the appellate court

17  reversed on the related bank fraud charges, noting that although "the Government proved

18  that TCB-Sugar Land was, in some way, related to TCB-Stafford, TCB-Houston, and to a

19  larger, but nebulous, Texas Commerce Bank organization, we find that the Government

20  failed to prove that TCB-Sugar Land was insured by the FDIC – whether under TCB-

21  National Association's policy or otherwise."  *Id.* at 726.

22     Neither case has any applicability here.  As the evidence set forth above

23  demonstrates, the United States proved that M&I Bank and TierOne and were themselves

24  the relevant lenders and were themselves FDIC insured.  *See generally United States v.*

25  *Ayewoh,* 627 F.3d 914, 919 (1st Cir. 2010) (FDIC certificate showing insured status, in

26  addition to testimony of bank employee to the same, is sufficient evidence to support

27  bank fraud charges); *United States v. Hampton,* 464 F.3d 687, 688 (7th Cir. 2006) (same);

28  *United States v. Ware,* 416 F.3d 1118, 1121-23 (9th Cir. 2005) (uncontradicted bank teller

testimony as to FDIC insured status is sufficient evidence); *United States v. Phillips,* 606 F.2d 884, 887 (9th Cir. 1979) (uncontradicted testimony by bank official as to FDIC status is sufficient evidence).

**III.    Any claims of prosecutorial misconduct have been waived; in any event, any such claims fail on the merits.**

Defendants' tired claims of prosecutorial misconduct, oft-repeated and never-founded, similarly fail.  Defendants preserved only claim of the FDIC-related status of M&I Bank and Regions Bank for purposes of this proceeding, therefore waiving all other claims.  Waiver aside, these claims are intertwined with the FDIC-related claims above and clearly fail for the same reasons set forth above.  The irony of these claims of misconduct cannot be lost on this Court:  they come from a defense team that intentionally delayed disclosure of documents until the literal eve of trial, intentionally delayed disclosure of an expert witness until day one of trial, intentionally delayed the disclosure of lay witnesses until moments before they actually testified, cross-examined a United States witness with evidence known to be false, and argued punishment to the jury in closing argument.  The claims of prosecutorial misconduct should be summarily rejected.

Respectfully submitted this 21st day of August, 2014.

> JOHN S. LEONARDO
> United States Attorney
> District of Arizona
>
> *s/Monica B. Klapper*
> KEVIN M. RAPP
> MONICA B. KLAPPER
> Assistant U.S. Attorneys

<h3 style="text-align:center">CERTIFICATE OF SERVICE</h3>

I hereby certify that on the 21st day of August, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

> Bruce Feder, attorney for Paxton Anderson
> Joy Bertrand, attorney for Joseph John Plany

*s/Gayell Smith*
US Attorney's Office

- 10 -