**EXHIBIT 18**
**DEFENDANTS' SENTENCING OBJECTIONS**
**Case No.  CR-12-1606-SRB**

CR12-01606-PHX-SRB   5-21-14 GREGORY SANCHEZ - Part 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

---

United States of America,            )
                                     )
            Plaintiff,               )
                                     )   CR12-01606-PHX-SRB
        vs.                          )   Phoenix, Arizona
                                     )   May 21, 2014
Paxton Jeffrey Anderson,             )
                                     )
            Defendant.               )
_____)
                                     )
Joseph John Plany,                   )
                                     )
            Defendant.                )
_____)


BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE
EXCERPT OF REPORTER'S TRANSCRIPT OF PROCEEDINGS
        JURY TRIAL - DAY #7
   TESTIMONY: GREGORY SANCHEZ - PART 1
      (Pages 1 through 153, Inclusive.)


Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

**APPEARANCES**

For the Government:

    U.S. ATTORNEY'S OFFICE
    By:  **Kevin M. Rapp, Esq.**
        **Monica B. Klapper, Esq.**
    40 North Central Avenue, Suite 1200
    Phoenix, AZ  85004

For the Defendant Paxton Jeffrey Anderson:

    FEDER LAW OFFICE PA
    By:  **Bruce S. Feder, Esq.**
    2930 East Camelback Road, Suite 160
    Phoenix, AZ  85016

For the Defendant Joseph John Plany:

    LAW OFFICE OF THOMAS M. HOIDAL, PLC
    By:  **Thomas M. Hoidal, Esq.**
    7227 North 16th Street, Suite 222
    Phoenix, AZ  85020

1
2                        **INDEX OF WITNESSES**
3
    **GREGORY SANCHEZ:**
4
    Direct examination by Ms. Rapp                        Page   4
5   Cross examination by Mr. Feder                        Page 104
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1         MR. HOIDAL:  No objection.
2         THE COURT:  The objection is overruled.  726, pages 1
3  through 4, are admitted.
4       (Exhibit No. 726, pages 1 through 4 admitted in evidence.)
5  BY MR. RAPP:
6  Q   Now, this is your Uniform Loan Application for the
7  Centennial property.  Do you recall who you originated this
8  through?
9         Let's see if I can go to the last page and help you
10 out.  Do you see that there?
11 A   Yes, sir.  Greg Slater, M&I Bank.
12 Q   And on this one under -- well, let's make sure we cover
13 all bases here.
14        Right here it's not even checked about which type of
15 residence.  Do you have any explanation as to why that wasn't?
16 A   It was a lot loan, so that could be why.
17 Q   All right.  But going to the Schedule of Real Estate, do
18 you see your real estate there that you've listed as
19 liabilities?
20 A   Yes, sir.
21 Q   Did you include the lot 3, Fire Rock, on this Schedule of
22 Liabilities?
23 A   No, sir.
24 Q   And is there a reason why you didn't do that?
25 A   I don't recall the reason, but I'm guessing that, again, I

1  would not qualify for this lot if it was on there.
2  Q   Do you recall having a discussion with Mr. Anderson
3  about -- if you did, about not representing lot 3 as a
4  liability on your Schedule of Real Estate?
5           MR. FEDER:  Speculation.
6           THE COURT:  Overruled.  He was asked if he recalled.
7           MR. FEDER:  He doesn't recall the last question.  I'm
8  not -- that's why it's speculation as to this question.
9           THE COURT:  Overruled.
10          Do you recall if you had any such discussion?  Yes or
11 no, please.
12          THE WITNESS:  I don't recall.
13 BY MR. RAPP:
14 Q   Okay.  How about with Mr. Slater?
15 A   Yes.  I do recall.
16 Q   What, if anything, did you talk with Mr. Slater about in
17 omitting the lot 3 property?
18 A   He actually coached me into not putting it on there.
19 Q   Did he give you a reason why?
20 A   Again, I would not qualify for the loan if it was on
21 there.  And he informed me that the construction loan would
22 not show up if they pulled my credit app or credit.
23 Q   So for that reason you omitted that liability?
24 A   Correct.
25 Q   Now, was Mr. Anderson -- did you have some agreement with

1  before -- he might have completed it through slab, eventually,
2  the foundation.
3  Q   And now at some point in your relationship with him after
4  Sanoque Court -- you are now living in Sanoque Court, right?
5  A   Correct.
6  Q   Have you at this point sold Ebony?
7  A   Correct.
8  Q   He is in the process, at least, of construction on lot 3,
9  Fire Rock?
10 A   Yes, sir.
11 Q   And you have -- you still have this property up in
12 Centennial Drive up in Prescott?
13 A   Yes, sir.
14 Q   And just remind us, did any construction get done on
15 Centennial?
16 A   No, sir.  That was a lot loan and we never -- I never got
17 a construction loan on that property.
18 Q   Okay.  But during this time period did you refer anybody
19 else to Mr. Anderson for the purpose of building a home?
20 A   Yes, sir.
21 Q   And how many, approximately, ballpark, of individuals that
22 you actually made the introduction?
23 A   I don't recall.  I mean, probably four close friends and
24 my father-in-law.
25 Q   All right.  Is there a reason why you referred these

1  people to Mr. Anderson to construct their houses?
2  A   Yes.  I thought everything he was saying was reputable and
3  true and I thought it would be a good investment for these
4  people.
5  Q   With these individuals that you referred to Mr. Anderson,
6  were these -- was the intent, if you know, to be investment
7  properties?
8          MR. FEDER:  Speculation.
9          THE COURT:  Sustained.
10 BY MR. RAPP:
11 Q   Well, did you discuss with these people -- let's just name
12 a few.
13          Who are the -- name some of the people you referred
14 to Mr. Anderson?
15 A   Larry Desmet.  Jason Woodward.  Bud Hayden.
16 Q   Was Bud Hayden your father-in-law?
17 A   Father-in-law.
18 Q   How about a gentleman by the name of Mark Acre?
19 A   Mark Acre.
20 Q   Were those people -- well, let's just start with
21 Mr. Woodward?
22 A   Uh-huh.
23 Q   Did he live here in Arizona.
24 A   No.  He lived in Seattle or Washington.
25 Q   Was that home, do you know based on your discussions with

1   A    Yes, sir.  In order for all of these people, other than
2   Bud Hayden, to qualify for doing a project with Dynamite
3   Custom Homes, they were all required to inflate their assets,
4   have false documentation showing that they had money into the
5   project, which wasn't true.
6        And I had those conversations not only with Paxton
7   but also with the lender as well.
8   Q    Okay.  Who was the lender that you had these discussions
9   with?
10  A    So it could have been -- depending on the loan, it could
11  have been Mike Blemaster or Greg Slater.
12  Q    All right.  How about with respect to employment?  Did you
13  have any discussions with Mr. Anderson -- during the time
14  period that these borrowers were referred to him for
15  construction loans, did you have any discussions with him
16  about the need to misrepresent their employment?
17  A    Yes, sir.
18  Q    And what was the nature of those discussions with
19  Mr. Anderson, if you recall?
20  A    Yes, sir.  It was along the same lines that I had to
21  verify their employment.  And so on their application they
22  were able to overstate their income in order to qualify for
23  these construction loans.
24  Q    Now, do you know what a prepaid invoice is?
25  A    Yes, sir.

CR12-01606-PHX-SRB 5-27-14 GREGORY SANCHEZ - Part 2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    vs.<br><br>Paxton Jeffrey Anderson,<br><br>        Defendant.<br><br>Joseph John Plany,<br><br>        Defendant. | CR12-01606-PHX-SRB<br>Phoenix, Arizona<br>May 27, 2014 |

BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE
EXCERPT OF REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY #8
TESTIMONY:  GREGORY SANCHEZ - PART 2
(Pages 154 through 222, Inclusive.)

Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

**A P P E A R A N C E S**

For the Government:

    U.S. ATTORNEY'S OFFICE
    By: **Kevin M. Rapp, Esq.**
        **Monica B. Klapper, Esq.**
    40 North Central Avenue, Suite 1200
    Phoenix, AZ  85004

For the Defendant Paxton Jeffrey Anderson:

    FEDER LAW OFFICE PA
    By: **Bruce S. Feder, Esq.**
    2930 East Camelback Road, Suite 160
    Phoenix, AZ  85016

For the Defendant Joseph John Plany:

    LAW OFFICE OF THOMAS M. HOIDAL, PLC
    By: **Thomas M. Hoidal, Esq.**
    7227 North 16th Street, Suite 222
    Phoenix, AZ  85020

### INDEX OF WITNESSES

**GREGORY SANCHEZ:**

| | |
|---|---|
| Cross examination by Mr. Hoidal | Page 157 |
| Redirect examination by Mr. Rapp | Page 206 |

1           **E X C E R P T   O F   P R O C E E D I N G S**

2           (Called to the order of court at 9:03 a.m.)

3           THE COURT: Good morning, ladies and gentlemen.

4    Welcome back. I hope you all had a nice holiday weekend.

5    Please sit down.

6           The record will show the presence of the jury,

7    counsel, and the defendants.

8           Mr. Hoidal, you may continue your cross-examination

9    of Mr. Sanchez.

10          MR. HOIDAL: Thank you.

11                **GREGORY SANCHEZ, WITNESS, SWORN**

12                       **CROSS EXAMINATION**

13   BY MR. HOIDAL:

14   Q   Good morning, Mr. Sanchez.

15   A   Good morning.

16   Q   Let's talk about the e-mails that fortunately Joey Plany

17   saved. Exhibit 788. Do you have Exhibit 788?

18          Take a look at all those e-mails. Those are all

19   between you and Paxton Anderson; isn't that correct?

20          THE COURT: Apparently, pages 1, 2, 7, and 9 of this

21   exhibit are already admitted. I don't know if we're --

22          MR. HOIDAL: I'm going to move for the entire exhibit

23   to be admitted.

24          THE COURT: Oh. Will there be any objection?

25          MR. RAPP: Well, yes. I have to know exactly which

1   one so I can know whether they're hearsay or nonhearsay.
2            THE COURT:  Well, he's offering --
3            MR. HOIDAL:  I'm offering the entire exhibit.
4            THE COURT:  The entire exhibit.
5            MR. RAPP:  There are a series of e-mails.  I have to
6   know which ones he's offering so I can determine whether they
7   are hearsay or not hearsay.
8            MR. HOIDAL:  Well, shall we go through each one of
9   them then, I guess.
10  BY MR. HOIDAL:
11  Q   All right, Mr. Sanchez.  Let's look at page 3 -- 2 and 3.
12  This is the e-mail that you sent to Paxton Anderson severing
13  your relationship with him, correct?
14           MR. RAPP:  My objection now is we just went over this
15  last Wednesday with Mr. Feder.
16           MR. HOIDAL:  This is just prefatory, Your Honor.
17           THE COURT:  Well, let's -- I will -- if it is just
18  beyond orienting us back to what we were talking about last
19  week, I will sustain a cumulative objection.  But let's go
20  ahead and put this back up so that the jury can see it and
21  recall it from last week.
22           MR. HOIDAL:  Correct, Your Honor.
23  BY MR. HOIDAL:
24  Q   Do you recall your testimony about this particular e-mail
25  that you sent to Paxton Anderson, sir?

1  A   Yes, sir.
2  Q   And you discussed the various properties that you had an
3  interest in, correct, sir?
4  A   Yes, sir.
5  Q   And with respect to lot 3 at Fire Rock, you indicated to
6  Mr. Anderson that you didn't plan to take any action with the
7  authorities or with anyone else at M&I Bank regarding these
8  alleged forged signatures, correct, sir?
9  A   Yes, sir.
10 Q   And you knew that draw requests were being paid on Fire
11 Rock 3, did you not, sir?
12 A   Yes, sir.
13 Q   And you knew that those draw requests were being submitted
14 by Dynamite Custom Homes, correct, sir?
15 A   I didn't see the first five or six draw requests.
16 Q   But you knew they were --
17 A   I found out they were --
18 Q   I'm sorry.
19 A   Yes.  Later on I did find out who they were submitted.
20 Q   Well, you knew since there was construction going on at
21 the site, that you knew that draw requests were likely being
22 submitted, correct, sir?
23 A   Yes, sir.
24 Q   And what you were doing with this e-mail, this e-mail on
25 June 29 of 2006, what you were doing by raising these alleged

```
 1   A   Correct.
 2   Q   Prosecutor was there, correct?
 3   A   Correct.
 4   Q   And your lawyer?
 5   A   Correct.
 6   Q   And you provided -- you provided at that time a list of
 7   properties that you have been involved with --
 8           THE COURT:  Once again, stop looking at the document
 9   and answer the questions based on your memory.
10           THE WITNESS:  Can you repeat the question?
11   BY MR. HOIDAL:
12   Q   You provided a document with the properties that you were
13   involved with, correct?
14   A   I don't recall.
15   Q   May the witness be shown Exhibit --
16           May I have just a minute, Your Honor?
17           THE COURT:  Yes.
18           MR. HOIDAL:  I believe it's Exhibit 1210.
19   BY MR. HOIDAL:
20   Q   Showing you what's been marked Exhibit 1210, for
21   identification, Mr. Sanchez, do you recognize that document?
22   A   Yes, sir.
23   Q   Is that a list of properties that was provided by you and
24   your lawyer to the agents and the prosecutor in October of
25   2010?
```

```
1    A    I don't recall if we provided -- this is my handwriting.
2    Q    So you wrote out this list of properties?
3    A    Yes, sir.
4    Q    And you told the agents that these were the property
5    transactions you had been involved in?
6    A    I don't recall that.
7              MR. HOIDAL:  Okay.  I would offer Exhibit 1210, Your
8    Honor.
9              MR. RAPP:  I object to hearsay.
10             THE COURT:  Sustained.
11   BY MR. HOIDAL:
12   Q    Well, let's talk about -- you wrote out a list of
13   properties for this meeting with the agents, correct?
14   A    I don't recall that.
15             THE COURT:  Do you know what purpose you had in
16   making this handwritten list?
17             THE WITNESS:  Yeah.  These were properties that
18   involved Mr. Anderson -- or Dynamite Custom Homes and myself
19   as far as introductions.
20             THE COURT:  Do you know where -- why or when you
21   wrote it out?
22             THE WITNESS:  No, I do not recall why or when I wrote
23   it out, Your Honor.
24   BY MR. HOIDAL:
25   Q    Well, certainly Fire Rock 3 was one of the properties,
```

1              Our 1306 is a complete --
2              THE COURT:  Do you want to substitute, Mr. Rapp, 1306
3      for 789?
4              MR. RAPP:  Sure.
5              THE COURT:  Okay.  Then 789 is withdrawn and 1306 is
6      admitted.
7              Now we're going to take 789 away from the witness.
8      Give him back 1306.  We're going to ask him to look at what I
9      think is the last page.
10             (Exhibit No. 1306 admitted in evidence.)
11             MR. FEDER:  This is --
12             THE COURT:  And the question is?
13             MR. FEDER:  Is that your signature?
14             THE COURT:  Is that your signature?
15             MR. FEDER:  Right.  Thank you.
16             THE WITNESS:  Yes, sir.
17     BY MR. FEDER:
18     Q    Thank you.  Now, in this agreement --
19             First of all, everything was spelled out as to what
20     the agreement was for lot 3 in Fire Rock, right?
21     A    Correct.
22     Q    And following your agreement to go your separate way, June
23     29 of 2006, this agreement was signed October 18th of 2006,
24     right?
25             THE COURT:  The date on the first page shows that the

CR12-01606-PHX-SRB   5-21-14 GREGORY SANCHEZ - Part 1

```
 1   agreement is entered into on that date, so go ahead.  That's
 2   what it says.
 3             Ask him a question that we can't see the answer to it
 4   by looking at the document camera.
 5   BY MR. FEDER:
 6   Q    You hired a lawyer and Mr. Anderson hired a lawyer, right?
 7   A    Correct.
 8   Q    You hired somebody, coincidentally enough, Eric Anderson?
 9   A    Correct.
10   Q    And Mr. Anderson had a law firm called Sacks Tierney,
11   right?
12   A    No.
13   Q    No?
14   A    I believe that was Anderson's attorney.
15   Q    I'm sorry?
16   A    I believe that was Anderson's attorney.
17   Q    Yes.  That's -- I'm sorry.  That's what I asked.
18   A    Oh.  I thought you said I had one.
19   Q    Your lawyer was Eric Anderson?
20   A    Correct.  I'm sorry.
21   Q    Dynamite's lawyer was Sacks Tierney?
22   A    Correct.
23   Q    Thank you.  And so page 1 just went through basically the
24   agreement that you had, right?
25   A    Correct.
```